66 F.3d 315
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Guo Chun DI, Plaintiff-Appellee,
v.
Anthony MOSCATO, in his official capacity as the Director of
the Executive Office for Immigration Review; Mary Maguire
Dunne, Acting Chairman of the Board of Immigration Appeals,
Defendants-Appellants.
 No. 94-1416.
 United States Court of Appeals, Fourth Circuit.
 Sept. 14, 1995.
 
 Frank W. Hunger, Asst. Atty. Gen., Lauri Steven Filppu, David M. McConnell, Kristin A. Cabral, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, DC, for appellants.
 John W. Polk, Timothy S. Burgett, Laura Foote Reiff, Jacob R. Wyatt, Baker & McKenzie, Washington, DC, for appellee.
 Before WILKINS, LUTTIG and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 The respondent officials of the Immigration and Naturalization Service appeal the district court's order granting Guo Chun Di's petition for habeas relief, and vacating the decisions of the Board of Immigration Appeals ("the Board"), and the Immigration Judge ("IJ"), to exclude Guo from the United States and to deny his petition for asylum.
 
 
 2
 Guo, a citizen of the People's Republic of China, ("PRC"), jumped overboard and attempted to swim to shore when his ship ran aground in a New York harbor on June 6, 1993. He was rescued before he reached the shore. The Immigration and Naturalization Service ("INS") charged Guo with attempting to enter the United States without valid entry documents in violation of the Immigration and Nationality Act ("the Act"), as amended, 8 U.S.C.A. Secs. 1182(a)(7)(A)(i)(I), 1182(a)(7)(B)(i)(I) & (II) (West 1970 & Supp.1995). During the exclusion proceedings before the IJ, Guo stated that he did not have a passport or visa which would have permitted him to legally enter the United States. The IJ found Guo subject to exclusion and deportation.
 
 
 3
 Guo sought relief from this order by applying for asylum. In support of his application, Guo offered the following facts: The month following the birth of his first child, a family planning official delivered a notice directing Guo's wife to report for sterilization. To avoid being sterilized, Guo's wife fled to her sister's home in a neighboring village. The family planning officials then notified Guo that he would have to undergo the sterilization procedure because they could not locate his wife. Guo then joined his wife and child at the home of his sister-in-law. Guo's father informed him that family planning officials confiscated the remaining personal possessions belonging to Guo and his wife, and destroyed that portion of the house that Guo and his wife occupied.
 
 
 4
 Guo further testified that he fled to the United States, despite not having the proper entry documents, because he feared that if the family planning officials found him, he would be sterilized against his will. Although the IJ found Guo's testimony to be credible, he determined that Guo was not eligible for refugee status because Guo "failed to demonstrate that he possesses an immutable trait or belief that is of adverse interest to a potential persecutor in China."
 
 
 5
 In dismissing Guo's appeal, the Board concurred with the IJ's conclusions that Guo had not demonstrated eligibility for asylum and withholding of deportation. The Board cited the regulations at 8 C.F.R. Part 208 (1993) and Matter of Chang, Interim Decision 3107 (BIA 1989), as the governing bodies of law applicable to Guo's application for asylum. Guo then sought judicial review of the Board's order by filing a petition for habeas relief.
 
 
 6
 The district court in Guo Chun Di v. Carroll, 842 F.Supp. 858, 874 (E.D.Va.1994), vacated the decisions of the IJ and the Board, holding that none of the inconsistent administrative pronouncements regarding the ability of aliens to seek asylum were entitled to judicial deference, and that Guo had met the statutory requirements to be eligible for asylum.
 
 
 7
 The disposition of this case was held in abeyance until the release of this court's decision in Chen Zhou Chai v. Carroll, 48 F.3d 1331 (4th Cir.1995), which is dispositive of this appeal. In Matter of Chang, the Board, interpreting the asylum statute, held that severe government sanctions in response to an alien's violations of his country's population control policy do not necessarily constitute persecution due to political opinion. Matter of Chang, Int. Dec. 3107 at 10-11. The applicant must demonstrate that any government action taken against him or her was for a reason other than the mere enforcement of the government's population control policies. Matter of Chang, Int. Dec. 3107 at 10-11. Affording deference to the Board's interpretation of the asylum statute in Matter of Chang, this court recognized that the Board has consistently applied Matter of Chang to claims for asylum based on the PRC's coercive population control practices, and that despite previous attempts to overturn its rule, Matter of Chang remains the controlling precedent. Chen, 48 F.3d at 1338-42.
 
 
 8
 The implementation of the PRC's population control policy, even to the extent that involuntary sterilizations may occur, does not in itself constitute persecution or create a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. Matter of Chang, Int. Dec. 3107 at 10-11. If the PRC's actions against the asylum applicant were merely to enforce its population control policy, the asylum claim must fail. Id. at 11. To establish eligibility for asylum, the applicant must demonstrate that any action taken by the PRC against him "arises for a reason other than general population control." Id. The Board's interpretation of the asylum statute in Matter of Chang was not unreasonable and was consistent with the Supreme Court's decision in INS v. Elias-Zacarias, 502 U.S. 478 (1992).
 
 
 9
 This court reviews de novo both the district court's order granting Guo's petition for habeas relief, and the Board's conclusion that Guo failed to meet asylum eligibility requirements. Chen, 48 F.3d at 1338; Sotelo-Aquije v. Slattery, 17 F.3d 33, 35 (2d Cir.1994). However, the Board's factual findings will not be reversed unless the evidence not only supports a contrary conclusion, but compels it. INS v. EliasZacarias, 502 U.S. at 481 & n. 1 (1992); Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir.1992). To obtain a judicial reversal of the Board's determination of ineligibility for asylum, Guo must show "that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." Elias-Zacarias, 502 U.S. at 483-84. Guo failed to present such compelling evidence.
 
 
 10
 The evidence revealed that Guo and his wife opposed the PRC's "one couple-one child" policy. They showed their opposition by refusing to submit to the government's sterilization orders. The government's actions, though severe, were in direct response to the family's fleeing the city and refusing to comply with the family planning policies. Guo testified before the IJ that he only feared returning to the PRC because he felt he would be involuntarily sterilized. Guo did not prove, nor does the record disclose, that the "PRC selectively enforced its population control policy against [him] because of his ... race, religion, nationality, membership in a particular social group, or political opinion." Chen, 48 F.3d at 1336 (citing Matter of Chang, Int. Dec. 3107 at 11).
 
 
 11
 Even if Guo could substantiate his claim that his opposition to the PRC's family planning policy constituted a "political opinion," for which he was persecuted or has a well-founded fear of future persecution if he were to return, he would still be required to prove that the government's actions against him were taken for a reason other than to enforce its population control policy. Guo's testimony proved only that if he were to return to the PRC he would probably be sterilized. There is no indication that the sterilization procedure, albeit involuntary, would be implemented for any other reason than as a function of the PRC's family planning policies.
 
 
 12
 The district court reasoned that because the right to make procreational decisions is protected under the Bill of Rights of the United States Constitution, any "expression of one's views regarding issues related to the right to procreate is 'political.' " Guo Chun Di v. Carroll, 842 F.Supp. at 872. The district court further stated that Guo, by refusing to comply with the government's sterilization orders, made an " 'overt manifestation' of his opposition to the PRC's 'one couple one child' policy, and that [he] has been persecuted for expressing this opposition." Guo Chun Di, 842 F.Supp. at 873. In reversing the Board's denial of Guo's application for asylum, the district court concluded that Guo had proved a well-founded fear of persecution for expressing his political opinion against the PRC's coercive family planning policies, and had consequentially established prima facie eligibility for asylum. Id . at 874.
 
 
 13
 The district court's conclusion is not in accord with this court's decision in Chen Zhou Chai v. Carroll, supra. In Chen, this court afforded great deference to the Board's interpretation of the asylum statute in Matter of Chang, acknowledged the district court's position for refusing to apply Matter of Chang as precedent, and ultimately determined that Matter of Chang is still controlling precedent for aliens seeking asylum based upon their country's coercive population control practices. Chen, 48 F.3d at 1342.
 
 
 14
 Guo has failed to prove that he was unable or unwilling to return to the PRC "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion"; therefore, he has failed to meet the threshold eligibility requirements for asylum. 8 U.S.C.A. Sec. 1101(a)(42)(A) (West 1970 & Supp.1995); see 8 U.S.C. Sec. 1158(a) (1988). Accordingly, we uphold the Board's denial of asylum to Guo and reverse the district court's order granting Guo's petition for habeas relief. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court, and oral argument would not aid the decisional process.
 
 
 15
 REVERSED.